**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

Eastern District of Virginia
_____(State)_____

Case number (*if known*): _____    Chapter __11__

☐ Check if this is an amended filing

## Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy

04/20

If more space is needed, attach a separate sheet to this form.  On the top of any additional pages, write the debtor's name and the case number (if known).  For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals*, is available.

| | | |
|---|---|---|
| 1. | **Debtor's Name** | CCTM, Inc. |

| | | |
|---|---|---|
| 2. | **All other names debtor used in the last 8 years** <br><br> Include any assumed names, trade names, and *doing business as* names | N/A |

| | | |
|---|---|---|
| 3. | **Debtor's federal Employer Identification Number** (EIN) | **20-5677183** |

**4. Debtor's address**

| Principal place of business | Mailing address, if different from principal place of business |
|---|---|
| **8323 Walton Parkway** | **933 MacArthur Boulevard** |
| Number        Street | Number        Street |
| | P.O. Box |
| **New Albany**        **OH**        **43054** | **Mahwah**        **NJ**        **07430** |
| City        State        Zip Code | City        State        Zip Code |
| | **Location of principal assets, if different from principal place of business** |
| **Franklin County** | |
| County | Number        Street |
| | |
| | City        State        Zip Code |

**5. Debtor's website** (URL)    **https://www.ascenaretail.com/**

**6. Type of debtor**

☒ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))

☐ Partnership (excluding LLP)

☐ Other. Specify: _____

| Debtor | CCTM, Inc. | Case number *(if known)* | |
|---|---|---|---|
| | Name | | |

**7. Describe debtor's business**

A. *Check One:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

☒ None of the above

B. *Check all that apply:*

☐ Tax-exempt entity (as described in 26 U.S.C. § 501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)

☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See
http://www.uscourts.gov/four-digit-national-association-naics-codes .
**4481 (Clothing Stores)**

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

A debtor who is a "small business debtor" must check the first sub-box. A debtor as defined in § 1182(1) who elects to proceed under subchapter V of chapter 11 (whether or not the debtor is a "small business debtor") must check the second sub-box.

*Check One:*

☐ Chapter 7

☐ Chapter 9

☒ Chapter 11. *Check all that apply:*

☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,725,625. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ The debtor is a debtor as defined in 11 U.S.C. § 1182(1). Its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $7,500,000 **and it chooses to proceed under Subchapter V of Chapter 11.** If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ A plan is being filed with this petition.

☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form**.**

☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

☒ No

☐ Yes.

| District | _____ | When | _____ | Case number | _____ |
|---|---|---|---|---|---|
| | | | MM/DD/YYYY | | |
| District | _____ | When | _____ | Case number | _____ |
| | | | MM/DD/YYYY | | |

Debtor    CCTM, Inc.                                                    Case number *(if known)*
_____
Name

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

List all cases. If more than 1, attach a separate list.

☐ No
☒ Yes.    Debtor    **See Rider 1**                    Relationship    **Affiliate**

District    **Eastern District of Virginia**

When    **07/23/2020**
MM / DD / YYYY

Case number, if known    _____

**11. Why is the case filed in *this* district?**

*Check all that apply:*

☐   Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☒   A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☒ No
☐ Yes.  Answer below for each property that needs immediate attention.  Attach additional sheets if needed.

**Why does the property need immediate attention?** (*Check all that apply.*)

☐   It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard?

☐   It needs to be physically secured or protected from the weather.

☐   It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐   Other

**Where is the property?**

_____
Number        Street

_____
City                    State    Zip Code

**Is the property insured?**

☐ No

☐ Yes.    Insurance agency    _____

Contact name    _____

Phone    _____

---

### Statistical and administrative information

**13. Debtor's estimation of available funds**

*Check one:*

☒   Funds will be available for distribution to unsecured creditors.
☐   After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors.

**14. Estimated number of creditors[1]**

| | | |
|---|---|---|
| ☐ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
| ☐ 50-99 | ☐ 5,001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☒ More than 100,000 |
| ☐ 200-999 | | |

---

[1]    The Debtors' estimated number of creditors noted here are provided on a consolidated basis.

Debtor ____CCTM, Inc._____          Case number _(if known)_ _____
         Name

| | | | |
|---|---|---|---|
| **15. Estimated assets** | ☒ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
| | ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☐ $1,000,000,001-$10 billion |
| | ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| | ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

| | | | |
|---|---|---|---|
| **16. Estimated liabilities** | ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
| | ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☒ $1,000,000,001-$10 billion |
| | ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| | ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

## Request for Relief, Declaration, and Signatures

**WARNING --**   Bankruptcy fraud is a serious crime.  Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ____07/23/2020____
                      MM/ DD / YYYY

✗   _/s/ Carrie W. Teffner_____                    Carrie W. Teffner_____
     Signature of authorized representative of debtor          Printed name

Title ___Authorized Signatory_____

**18. Signature of attorney**          ✗   _/s/ Olya Antle_____     Date   __07/23/2020__
                                          Signature of attorney for debtor              MM/DD/YYYY

**Olya Antle**_____
Printed name

**Cooley LLP**_____
Firm name

**1299 Pennsylvania Avenue, NW, Suite 700**_____
Number                    Street

**Washington**_____     **DC**_____     **20004-2400**_____
City                                               State          ZIP Code

**(202) 842-7800**_____     **oantle@cooley.com**_____
Contact phone                                  Email address

**83153**_____     **Virginia**_____
Bar number                                State
**(Admitted to practice in Virginia; Not admitted to practice in DC, supervised by members of DC bar)**

| Fill in this information to identify the case: |
| --- |
| United States Bankruptcy Court for the: |
| Eastern District of Virginia |
| (State) |
| Case number *(if known)*: _____    Chapter  11 |

☐ Check if this is an
amended filing

## Rider 1
### Pending Bankruptcy Cases Filed by the Debtor and Affiliates of the Debtor

On the date hereof, each of the entities listed below (collectively, the "Debtors") filed a petition in the United States Bankruptcy Court for the Eastern District of Virginia for relief under chapter 11 of title 11 of the United States Code. The Debtors have moved for joint administration of these cases under the case number assigned to the chapter 11 case of Ascena Retail Group, Inc.

- Ascena Retail Group, Inc.
- 933 Inspiration LLC
- Ann Card Services, Inc.
- Ann, Inc.
- AnnCo, Inc.
- AnnTaylor Distribution Services, Inc.
- AnnTaylor of Puerto Rico, Inc.
- AnnTaylor Retail, Inc.
- AnnTaylor, Inc.
- Ascena Retail Holdings, Inc.
- Ascena Trade Services, LLC
- ASNA Plus Fashion, Inc.
- ASNA Value Fashion LLC
- BackingBrands Buying Agent, LLC
- BackingBrands Solutions, LLC
- C.S.F. Corp.
- Catalog Receivables LLC
- Catalog Seller LLC
- Catherines #5124, Inc.
- Catherines #5147, Inc.
- Catherines Stores Corporation
- Catherines, Inc.
- CCTM, Inc.
- Charming Sales Co. Four, Inc.
- Charming Sales Co. One, Inc.
- Charming Sales Co Three, Inc.
- Charming Sales Co. Two, Inc.
- Charming Shoppes of Delaware, Inc.
- Charming Shoppes Receivables Corp.
- Charming Shoppes Seller, Inc.
- Charming Shoppes Street, Inc.
- Charming Shoppes, Inc.
- Chestnut Acquisition Sub Inc.
- Crosstown Traders, Inc.
- CS HoldCo II Inc.
- CSGC, Inc.
- CSI Industries, Inc.
- CSPE, LLC
- DBCM Holdings, LLC
- DBI Holdings, Inc.
- DBX, Inc.
- Duluth Real Estate LLC
- Etna Retail DC, LLC
- Fashion Apparel Sourcing LLC
- Fashion Service Fulfillment Corporation
- Fashion Service LLC
- GC Fulfillment, LLC
- Lane Bryant #6243, Inc.
- Lane Bryant of Pennsylvania, Inc.
- Lane Bryant Outlet 4106, Inc.
- Lane Bryant Purchasing Corp.
- Lane Bryant, Inc.
- PSTM, Inc.
- Sonsi, Inc.
- Spirit of America, Inc.
- Too GC, LLC
- Tween Brands Agency, Inc.
- Tween Brands Direct Services Inc.
- Tween Brands Investment, LLC
- Tween Brands Marketing, Inc.
- Tween Brands Service Co.
- Tween Brands, Inc.
- Winks Lane, Inc.
- Worldwide Retail Holdings, Inc.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CCTM, INC., | ) | Case No. 20-_____(___) |
| | ) | |
| Debtor. | ) | |
| | ) | |

**LIST OF EQUITY SECURITY HOLDERS**[1]

| Debtor | Equity Holders | Address of Equity Holder | Percentage Held |
|---|---|---|---|
| CCTM, Inc. | Charming Shoppes, Inc. | 933 MacArthur Boulevard Mahwah, NJ 07430 | 100% |

---

[1] This list serves as the disclosure required to be made by the debtor pursuant to Rule 1007 of the Federal Rules of Bankruptcy Procedure.  All equity positions listed indicate the record holder of such equity as of the date of commencement of the chapter 11 case.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CCTM, INC., | ) | Case No. 20-_____(___) |
| | ) | |
| Debtor. | ) | |
| | ) | |

## CORPORATE OWNERSHIP STATEMENT

Pursuant to rules 1007(a)(1) and 7007.1 of the Federal Rules of Bankruptcy Procedure, the following are corporations, other than a government unit, that directly or indirectly own 10% or more of any class of the debtor's equity interest:

| Shareholder | Approximate Percentage of Shares Held |
|---|---|
| Charming Shoppes, Inc. | 100% |

| Fill in this information to identify the case: |
| --- |
| Debtor name _Ascena Retail Group, Inc., et al._ |
| United States Bankruptcy Court for the: _Eastern_ District of _Virginia_ |
| Case number (If known): _____ |

☐ Check if this is an
amended filing

## Official Form 204

# Chapter 11 or Chapter 9 Cases: Consolidated List of Creditors Who Have the 50 Largest Unsecured Claims and Are Not Insiders

12/15

A list of creditors holding the 50 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 50 largest unsecured claims.

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim | Indicate if claim is contingent, unliquidated, disputed | Amount of unsecured claim. If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1 | SIMON PROPERTY GROUP ATTN: DAVID SIMON CHIEF EXECUTIVE OFFICER SIMON PROPERTY GROUP, INC. 225 WEST WASHINGTON STREET INDIANAPOLIS, IN 46204 | DAVID SIMON EMAIL - PHONE - 317-636-1600 FAX - | TRADE PAYABLE | C | | | $31,664,060 |
| 2 | BROOKFIELD PROPERTIES ATTN: STACIE L. HERRON EXECUTIVE VICE PRESIDENT, GENERAL COUNSEL AND SECRETARY BROOKFIELD PLACE NEW YORK 250 VESEY STREET, 15TH FLOOR NEW YORK, NY 10281 | STACIE L. HERRON EMAIL - STACIE.HERRON@BROOKFIELDPROPERTIES RETAIL.COM; LINDSAY.KAHN@BROOKFIELDPROPERTIES RETAIL.COM; ANDREW.BRENT@BROOKFIELDPROPERTIES .COM PHONE - 212-417-7000 | TRADE PAYABLE | C | | | $16,619,835 |
| 3 | BOSTON PROPERTIES LIMITED PARTNERSHIP ATTN: DOUGLAS T. LINDE PRESIDENT 800 BOYLSTON STREET AT THE PRUDENTIAL CENTER BOSTON, MA 02199-8103 | DOUGLAS T. LINDE EMAIL - PHONE - 617-236-3300 FAX - 617-536-5087 | TRADE PAYABLE | C | | | $8,809,477 |
| 4 | TANGER PROPERTIES, LP ATTN: STEVEN B. TANGER CHIEF EXECUTIVE OFFICER 3200 NORTHLINE AVENUE SUITE 360 GREENSBORO, NC 27408 | STEVEN B. TANGER EMAIL - SBTANGER@TANGEROUTLET.COM PHONE - 336-292-3010 FAX - 336-852-2096 | TRADE PAYABLE | C | | | $7,228,481 |

Debtor ___Ascena Retail Group, Inc., et al.___                    Case Number (if known) _____

Name

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim | Indicate if claim is contingent, unliquidated, disputed | Amount of unsecured claim  If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 5 | PAN PACIFIC CO LTD ATTN: SUK-WON LIM CHIEF EXECUTIVE OFFICER (08380) 12 DIGITAL-RO 31-GIL GURO-GU SEOUL, GURO-DONG,   197-21 KOREA | SUK-WON LIM EMAIL - PANPACIFIC@PANPACIFIC.CO.KR PHONE - +82-2-3494-9000 FAX - +82-2-830-1011 | TRADE PAYABLE | | | | $6,831,314 |
| 6 | MGF SOURCING ATTN: JAMES SCHWARTZ CHIEF EXECUTIVE OFFICER 4200 REGENT STREET SUITE 205 COLUMBUS, OH  43219 | JAMES SCHWARTZ EMAIL - JAMES.SCHWARTZ@MGFSOURCING.COM PHONE - 614-904-3269 FAX - 614-415-7242 | TRADE PAYABLE | | | | $6,726,982 |
| 7 | SAE A TRADING CO. LTD ATTN: WOONG-KI KIM CHAIRMAN SAE-A BLDG. 429 YEONGDONG-DAERO GANGNAM-GU SEOUL, KOREA | WOONG-KI KIM EMAIL - PHONE -  +82 2 6252 7000 FAX - +82-2-6252-7005 | TRADE PAYABLE | | | | $6,347,041 |
| 8 | ORIENT CRAFT ATTN: SUDHIR DHINGRA CHIEF EXECUTIVE OFFICER PLOT NO. 80P SECTOR-34 NEAR HERO HONDA CHOWK GURGAON,   122001 INDIA | SUDHIR DHINGRA EMAIL - SUDHIR.DHINGRA@ORIENTCRAFT.COM PHONE - +0124-4511300 FAX - +0124-4511330 | TRADE PAYABLE | | | | $5,309,190 |
| 9 | THE MACERICH COMPANY ATTN: ANN C. MENARD SENIOR EXECUTIVE VICE PRESIDENT, CHIEF LEGAL OFFICER AND SECRETARY 401 WILSHIRE BOULEVARD, SUITE 700 SANTA MONICA, CA  90401 | ANN C. MENARD EMAIL - ANN.MENARD@MACERICH.COM PHONE - 310-394-6000; 424-229-3575 FAX - 310-395-2791 | TRADE PAYABLE | C | | | $5,252,749 |
| 10 | HIP SING CHINA INDUSTRIAL LIMITED ATTN: ADA LAU UNIT B5, 6/F BLK 2, CAMELPAINT BLDG 62 HOI YUEN ROAD KWUN TONG, KOWLOON, HONG KONG | ADA LAU EMAIL - PHONE - +852-23905128 FAX - +852-23915128 | TRADE PAYABLE | | | | $5,075,819 |

Debtor  Ascena Retail Group, Inc., et al.                                                    Case Number (if known)
        Name

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim | Indicate if claim is contingent, unliquidated, disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If the claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 11 | PT. ERATEX (HONG KONG) LTD ATTN: MR. MANIWANEN PRESIDENT SPAZIO BUILDING 3RD FLOOR UNIT.319-321 GRAHA FESTIVAL KAV.3 – GRAHA FAMILY JL. MAYJEND YONO SOEWOYO SURABAYA,  60226 INDONESIA | MR. MANIWANEN EMAIL - PHONE - +62-31-99001101 FAX - +62-31-99001115 | TRADE PAYABLE | | | | $5,026,842 |
| 12 | THE TAUBMAN COMPANY ATTN: CHRIS HEAPHY EXECUTIVE VICE PRESIDENT, GENERAL COUNSEL & SECRETARY 200 E. LONG LAKE ROAD, SUITE 300 BLOOMFIELD HILLS, MI  48304-2324 | CHRIS HEAPHY EMAIL - CHEAPHY@TAUBMAN.COM; RHURREN@TAUBMAN.COM; MMAINVILLE@TAUBMAN.COM PHONE - 248-258-6800 FAX - | TRADE PAYABLE | C | | | $4,550,301 |
| 13 | POONGIN TRADING CO.LTD ATTN: PAUL PARK CHIEF EXECUTIVE OFFICER 18F–20F ACE HIGH TECH CITY B/D 2 DONG, GYEONGLN-RO YEONGDEUNGPO-GU SEOUL,  755 KOREA | PAUL PARK EMAIL - PHONE - +82-2-549-8313 FAX - +82-2-549-8310 | TRADE PAYABLE | | | | $4,507,327 |
| 14 | TAINAN ENTERPRISES CO. LTD ATTN: CHING-HON YANG CHAIRMAN 5-1, SECTION 1 HANGZHOU SOUTH ROAD ZHONGZHENG DISTRICT TAIPEI CITY,  100 TAIWAN | CHING-HON YANG EMAIL - PHONE -  +886 2 2391 6421 FAX -  +886 2 2397 1413 | TRADE PAYABLE | | | | $4,402,392 |
| 15 | CBL & ASSOCIATES, INC. ATTN: STEPHEN D. LEBOVITZ CHIEF EXECUTIVE OFFICER CBL CENTER, SUITE 500 2030 HAMILTON PLACE BLVD. CHATTANOOGA, TN  37421 | STEPHEN D. LEBOVITZ EMAIL - PHONE - 432-855-0001 FAX - | TRADE PAYABLE | C | | | $4,244,203 |
| 16 | ORACLE AMERICA INC ATTN: DORIAN DALEY GENERAL COUNSEL REDWOOD SHORES ORACLE CORPORATION 500 ORACLE PARKWAY REDWOOD SHORES, CA  94065 | DORIAN DALEY EMAIL - DORIAN.DALEY@ORACLE.COM PHONE - 650-506-7000 FAX - 650-633-1813 | TRADE PAYABLE | | | | $4,158,303 |

Debtor  Ascena Retail Group, Inc., et al.
        Name

Case Number (if known)

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim | Indicate if claim is contingent, unliquidated, disputed | Amount of unsecured claim. If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 17 | CHOI & SHIN'S CO.,LTD ATTN: PRESIDENT OR GENERAL COUNSEL 61 BUKCHON-RO, JONGNO-GU SEOUL,  110260 SOUTH KOREA | PRESIDENT OR GENERAL COUNSEL EMAIL - PHONE - +82-232947200 FAX - | TRADE PAYABLE | | | | $3,973,814 |
| 18 | CRYSTAL ELEGANCE INDUSTRIAL LIMITED ATTN: LAM ANTHONY VICE PRESIDENT 71 HOW MING STREET KWUN TONG, KOWLOON, HONG KONG | LAM ANTHONY EMAIL - INFO@CRYSTALGROUP.COM PHONE - FAX - | TRADE PAYABLE | | | | $3,916,508 |
| 19 | SNOGEN GREEN CO.,LTD ATTN: JUNGKU HONG CHIEF EXECUTIVE OFFICER 12, GWANGPYEONG-RO 56-GIL GANGNAM-GU SEOUL, KOREA | JUNGKU HONG EMAIL - PHONE - +02-6496-6400 FAX - +02-6496-6501 | TRADE PAYABLE | | | | $3,671,183 |
| 20 | UBASE INTERNATIONAL INC ATTN: YONG HOE KIM CHIEF EXECUTIVE OFFICER 345, TTUKSEOM-RO SEONGDONG-GU SEOUL (SEONGSU-DONG),  04780 KOREA | YONG HOE KIM EMAIL - CONTACTUS@UBASEINTERNATIONAL.COM PHONE - +82 2-420-0001 FAX - +82 2-421-8787 | TRADE PAYABLE | | | | $3,628,175 |
| 21 | TEX WORLD PTE LTD ATTN: PRESIDENT OR GENERAL COUNSEL PRESIDENT 610, ATL CORPORATE PARK SAKI VIHAR ROAD, POWAI MUMBAI, MAHARASHTRA  400072 INDIA | PRESIDENT OR GENERAL COUNSEL EMAIL - INFO@TEXWORLD.CO PHONE - +91-22-42293542 FAX - | TRADE PAYABLE | | | | $3,506,978 |
| 22 | WESTFIELD CORPORATION, INC. ATTN: PETER SCHWARTZ GENERAL COUNSEL 2049 CENTURY PARK EAST, 40TH FLOOR CENTURY CITY, CA  90067 | PETER SCHWARTZ EMAIL - PHONE - 310-478-4456 FAX - 310-478-1267 | TRADE PAYABLE | C | | | $3,448,669 |

Debtor  Ascena Retail Group, Inc., et al.                    Case Number (if known)
        Name

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim | Indicate if claim is contingent, unliquidated, disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 23 | KYUNG SEUNG  CO. LTD. ATTN: J. J. PARK CHIEF EXECUTIVE OFFICER 408 SAMSEOUNG-RO GYEONGSEUNG BUILDING GANGNAM-GU SEOUL, KOREA | J. J. PARK EMAIL - PHONE - +82-2-550-1414 FAX - +82-2-566-6867 | TRADE PAYABLE | | | | $3,255,132 |
| 24 | LAKONTRA INTERNATIONAL MERCHANDISING CORP ATTN: PRESIDENT OR GENERAL COUNSEL MERCHANDISING CORP NO.186 SEC.4 NANKINGE. RD TAIPEI, TAIWAN | PRESIDENT OR GENERAL COUNSEL EMAIL - PHONE - FAX - | TRADE PAYABLE | | | | $3,031,988 |
| 25 | MTL SOURCING DMCC ATTN: PRESIDENT OR GENERAL COUNSEL HDS BUSINESS CENTRE JUMAIRA LAKE TOWERS DUBAI, UNITED ARAB EMIRATES | PRESIDENT OR GENERAL COUNSEL EMAIL - PHONE - FAX - | TRADE PAYABLE | | | | $3,024,427 |
| 26 | RICHA GLOBAL EXPORTS PVT LTD ATTN: VIRENDER UPPAL CHAIRMAN 219, UDYOG VIHAR PHASE-I GURGAON HARYANA,  122001 INDIA | VIRENDER UPPAL EMAIL - INFO@RICHAGLOBAL.COM PHONE - +91-124-4314000 FAX - | TRADE PAYABLE | | | | $3,020,253 |
| 27 | IBM CORPORATION ATTN: PRESIDENT OR GENERAL COUNSEL 1 NEW ORCHARD ROAD ARMONK, NY  10504-1722 | PRESIDENT OR GENERAL COUNSEL EMAIL - ARVIND.KRISHNA@IBM.COM PHONE - 914-499-1900 FAX - 914-765-4190 | TRADE PAYABLE | | | | $2,952,280 |
| 28 | BUSANA APPAREL PTE LTD ATTN: MR. MANIWANEN CHAIRMAN AXA TOWER 41ST & 43RD FLOOR KUNINGAN CITY JALAN PROF. DR. SATRIO KAV. 18 KUNINGAN, SETIABUDI,  JAKARTA 12940 INDONESIA | MR. MANIWANEN EMAIL - PHONE - +6221-522-9344 FAX - +6221-3005-6052 | TRADE PAYABLE | | | | $2,847,689 |

Debtor  Ascena Retail Group, Inc., et al.                    Case Number (if known)
        Name

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim | Indicate if claim is contingent, unliquidated, disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 29 | WASHINGTON PRIME GROUP, INC. ATTN: ROBERT P. DEMCHAK, ESQ. EXECUTIVE VICE PRESIDENT, GENERAL COUNSEL AND CORPORATE SECRETARY 180 EAST BROAD STREET COLUMBUS, OH  43215 | ROBERT P. DEMCHAK, ESQ. EMAIL - WPGINFO@WASHINGTONPRIME.COM PHONE - 614-621-9000 FAX - | TRADE PAYABLE | C | | | $2,726,248 |
| 30 | MOLAX TRADING LIMITED ATTN: PRESIDENT OR GENERAL COUNSEL 75-95, SEOSOMUN-DONG 8RD FLOOR, YOUONE BUILDING CHUNG-KU SEOUL,  100-110 KOREA | PRESIDENT OR GENERAL COUNSEL EMAIL - ADMIN@MOLAXTRADING.COM PHONE - 02-773-3601 FAX - 02-757-2044 | TRADE PAYABLE | | | | $2,656,298 |
| 31 | GUANGDONG SINGWEAR GARMENTS CO LTD ATTN: PRESIDENT OR GENERAL COUNSEL XIANGANG INDUSTRIAL PARK SIMAPU TOWN, CHAONAN DISTRICT GUANGDONG PROVINCE SHANTOU CITY, CHINA | PRESIDENT OR GENERAL COUNSEL EMAIL - PHONE - +86-0754-82201270 FAX - +86-754-87715720 | TRADE PAYABLE | | | | $2,650,820 |
| 32 | ASMARA INTERNATIONAL LIMITED ATTN: VENKY NAGAN CHIEF EXECUTIVE OFFICER UNIT 8B, TONG YUEN FACTORY BUILDING 505 CASTLE PEAK ROAD LAI CHI KOK, KOWLOON, HONG KONG | VENKY NAGAN EMAIL - CONTACT@ASMARAGROUP.COM PHONE - +852-27442255 FAX - +852-27442244 | TRADE PAYABLE | | | | $2,604,654 |
| 33 | ANANTA SPORTSWEAR LIMITED ATTN: AMIN KHAN PRESIDENT 2071, N. COLLINS BLVD. STE 201 RICHARDSON, TX  75080 | AMIN KHAN EMAIL - AMIN@BIMPEX.COM; SAJED@ANANTA.COM.BD PHONE - 972-759 0732 FAX - 972-692-8826 | TRADE PAYABLE | | | | $2,595,148 |
| 34 | ACCENTURE LLP ATTN: JULIE SWEET CHIEF EXECUTIVE OFFICER 1 GRAND CANAL SQUARE DUBLIN,  D02 P820 IRELAND | JULIE SWEET EMAIL - JULIE.SWEET@ACCENTURE.COM PHONE - +353-1646-2000 FAX - +353-1646-2020 | TRADE PAYABLE | | | | $2,555,866 |

Debtor  Ascena Retail Group, Inc., et al.                    Case Number (if known)
        Name

| Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim | Indicate if claim is contingent, unliquidated, disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 35 INTERNATIONAL TRADING SERVICES LTD ATTN: PRESIDENT OR GENERAL COUNSEL VICTORIA LANE INDUSTRIAL PARK 7620 VICTORIA CT BROWNSVILLE, TX 78521 | PRESIDENT OR GENERAL COUNSEL EMAIL - PHONE - 956-831-2740 FAX - | TRADE PAYABLE | | | | $2,520,994 |
| 36 JIANGSU GUOTAI GUOSHENG CO LTD ATTN: PRESIDENT OR GENERAL COUNSEL 7-22/F GUOTAI NEW CENTURY PLAZA NO.125 MIDDLE RENMIN RD ZHANGJIAGANG JIANGSU, 215600 CHINA | PRESIDENT OR GENERAL COUNSEL EMAIL - HUASHENG@GTHS.CN PHONE - +0512-58988898 FAX - +0512-58686837 | TRADE PAYABLE | | | | $2,465,288 |
| 37 HANGZHOU LINGXIU KNITTING CO LTD ATTN: JARED LU 418 HENGFU ROAD HENGCUN TOWN TONGLU COUNTY ZHEJIANG, CHINA | JARED LU EMAIL - JARED_LU@LINXIU.COM PHONE - +86-571-64673088 FAX - | TRADE PAYABLE | | | | $2,458,758 |
| 38 JOHN GALLIN & SON, INC. ATTN: CHRISTOPHER GALLIN PRESIDENT 102 MADISON AVENUE 9TH FLOOR NEW YORK, NY 10016 | CHRISTOPHER GALLIN EMAIL - CHRISG@GALLIN.COM PHONE - 212-252-8900 FAX - 212-252-8910 | TRADE PAYABLE | | | | $2,437,642 |
| 39 JONES LANG LASALLE AMERICAS, INC. ATTN: ALAN TSE GLOBAL CHIEF LEGAL OFFICER AND CORPORATE SECRETARY 200 EAST RANDOLPH DRIVE CHICAGO, IL 60601 | ALAN TSE EMAIL - ALAN.TSE@JLL.COM PHONE - 312-228-2808 FAX - | TRADE PAYABLE | C | | | $2,364,445 |
| 40 LEE & CO. ATTN: ARLEN LEE CHIEF EXECUTIVE OFFICER 1278 INDIANA ST SUITE 101 SAN FRANCISCO, CA 94107 | ARLEN LEE EMAIL - HELLO@LEEANDCO.COM PHONE - 415-475-9029 FAX - | TRADE PAYABLE | | | | $2,354,770 |

Debtor ___Ascena Retail Group, Inc., et al.___                                    Case Number (if known) _____
              Name

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim | Indicate if claim is contingent, unliquidated, disputed | Amount of unsecured claim. If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 41 | AJG INC ATTN: J. PATRICK GALLAGHER JR. CHIEF EXECUTIVE OFFICER 2850 GOLF ROAD ROLLING MEADOWS, IL  60008 | J. PATRICK GALLAGHER JR. EMAIL - PHONE - 630-773-3800 FAX - 630-285-4000 | TRADE PAYABLE | | | | $2,258,832 |
| 42 | WS TRADING LIMITED ATTN: PRESIDENT OR GENERAL COUNSEL 50 TRADESTON STREET GLASGOW, SCOTLAND,   G5 8BH UNITED KINGDOM | PRESIDENT OR GENERAL COUNSEL EMAIL - PHONE - FAX - | TRADE PAYABLE | | | | $2,248,644 |
| 43 | SOLVE IT CO., LTD ATTN: PRESIDENT OR GENERAL COUNSEL 3/F 556 CHEONHO-DAERO GWANGJIN-GU SEOUL,  143847 SOUTH KOREA | PRESIDENT OR GENERAL COUNSEL EMAIL - PHONE - +82-24536868 FAX - | TRADE PAYABLE | | | | $2,098,603 |
| 44 | TISHMAN SPEYER PROPERTIES ATTN: MICHAEL B. BENNER SENIOR MANAGING DIRECTOR AND GENERAL COUNSEL ROCKEFELLER CENTER, 45 ROCKEFELLER PLAZA NEW YORK, NY  10111 | MICHAEL B. BENNER EMAIL - NY@TISHMANSPEYER.COM PHONE - 212-715-0300 FAX - 212-319-1745 | TRADE PAYABLE | C | | | $2,026,953 |
| 45 | MODINDIA EXIM PRIVATE LTD ATTN: GAGAN GULATI DIRECTOR B-57 OKHLA INDUSTRIAL AREA, PHASE-I NEW DELHI,  110020 INDIA | GAGAN GULATI EMAIL - INFO@MODELAMAEXPORTS.COM PHONE - FAX - | TRADE PAYABLE | | | | $2,015,483 |
| 46 | SOUTH ASIA KNITTING FTY LTD (NEW) ATTN: PRESIDENT OR GENERAL COUNSEL 17/F, SOUTH ASIA BUILDING 108 HOW MING STREET KWUN TONG KOWLOON, HONG KONG | PRESIDENT OR GENERAL COUNSEL EMAIL - LEOYEUNG@SOUTHASIAGROUP.COM PHONE - 852-2345-0261 FAX - 852-2343-3666 | TRADE PAYABLE | | | | $1,936,284 |

Debtor  Ascena Retail Group, Inc., et al.
_____
        Name

        Case Number (if known) _____

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim | Indicate if claim is contingent, unliquidated, disputed | Amount of unsecured claim<br>If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 47 | MEENU CREATION LLP<br>ATTN: PRESIDENT OR GENERAL COUNSEL<br>A-33. SECTOR - 64 NOIDA DISTT<br>GAUTAM BUDH NAGAR,  UP-201301<br>INDIA | PRESIDENT OR GENERAL COUNSEL<br>EMAIL - ED@MEENUCREATION.COM<br>PHONE - 91-120-4080200<br>FAX - 91-120-4080200 | TRADE PAYABLE | | | | $1,876,239 |
| 48 | THE FORBES COMPANY<br>ATTN: PRESIDENT OR GENERAL COUNSEL<br>100 GALLERIA OFFICENTRE, SUITE 427<br>SOUTHFIELD, MI  48034 | PRESIDENT OR GENERAL COUNSEL<br>EMAIL - NFORBES@THEFORBESCOMPANY.COM<br>PHONE - 248-827-4600<br>FAX - | TRADE PAYABLE | C | | | $1,830,041 |
| 49 | GAURAV INTERNATIONAL<br>ATTN: ANJU SACHDEVA<br>PD MANAGER<br>198, UDYOG VIHAR PHASE 1<br>UDYOG VIHAR, SECTOR 20<br>GURUGRAM, HARYANA,  122001<br>INDIA | ANJU SACHDEVA<br>EMAIL - GINTL@RICHAGROUP.COM<br>PHONE - +91 124 480 3900<br>FAX - +91 124 2439710 | TRADE PAYABLE | | | | $1,820,631 |
| 50 | CHRISTINE CLARK AND OTHER SIMILARLY SITUATED INDIVIDUALS<br>ATTN: WILLIAM B. SULLIVAN, ERIC K. YAECKEL, AND ANDREA TORRES-FIGUEROA<br>ATTORNEYS FOR PLAINTIFFS<br>SULLIVAN LAW GROUP, APC<br>2330 THIRD AVENUE<br>SAN DIEGO, CA  92101 | WILLIAM B. SULLIVAN, ERIC K. YAECKEL, AND ANDREA TORRES-FIGUEROA<br>EMAIL - HELEN@SULLIVANLAWGROUPAPC.COM, YAECKEL@SULLIVANLAWGROUPAPC.COM, ATORRES@SULLIVANLAWGROUPAPC.COM<br>PHONE - 619-702-6760<br>FAX - 619-702-6761 | LITIGATION SETTLEMENT | C | | | Undetermined |

Fill in this information to identify the case and this filing:

| | |
|---|---|
| Debtor Name | CCTM, Inc. |
| United States Bankruptcy Court for the: | Eastern District of Virginia |
| | (State) |
| Case number (If known): | |

## Official Form 202

## Declaration Under Penalty of Perjury for Non-Individual Debtors          12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

### ▮ Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐   *Schedule A/B: Assets-Real and Personal Property (Official Form 206A/B)*

☐   *Schedule D: Creditors Who Have Claims Secured by Property (Official Form 206D)*

☐   *Schedule E/F: Creditors Who Have Unsecured Claims (Official Form 206E/F)*

☐   *Schedule G: Executory Contracts and Unexpired Leases (Official Form 206G)*

☐   *Schedule H: Codebtors (Official Form 206H)*

☐   *Summary of Assets and Liabilities for Non-Individuals (Official Form 206Sum)*

☐   Amended Schedule

☒   *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 50 Largest Unsecured Claims and Are Not Insiders (Official Form 204)*

☒   Other document that requires a declaration_____   **List of Equity Security Holders and Corporate Ownership Statement**_____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on

| | |
|---|---|
| __07/23/2020__ | ☒ */s/ Carrie W. Teffner* |
| MM/ DD/YYYY | Signature of individual signing on behalf of debtor |
| | **Carrie W. Teffner** |
| | Printed name |
| | **Authorized Signatory** |
| | Position or relationship to debtor |

**Official Form 202**                    **Declaration Under Penalty of Perjury for Non-Individual Debtors**

**C.S.F. CORP**
**CATALOG SELLER LLC**
**CATHERINES #5124, INC.**
**CATHERINES #5147, INC.**
**CCTM, INC.**
**CHARMING SALES CO. ONE, INC.**
**CHARMING SALES CO. TWO, INC.**
**CHARMING SALES CO THREE, INC.**
**CHARMING SALES CO. FOUR, INC.**
**CHARMING SHOPPES RECEIVABLES CORP.**
**CROSSTOWN TRADERS INC.**
**CS HOLDCO II INC.**
**CSI INDUSTRIES, INC.**
**LANE BRYANT #6243, INC.**
**LANE BRYANT OF PENNSYLVANIA, INC.**
**LANE BRYANT OUTLET 4106, INC.**
**LANE BRYANT PURCHASING CORP.**
**PSTM, INC.**
**SONSI, INC.**

**Unanimous Written Consent of the Board of Directors**

July 22, 2020

The undersigned, being all of the members of the Board of Directors of each of (i) C.S.F. Corp, a Delaware corporation ("C.S.F."), (ii) Catalog Seller LLC, a Delaware limited liability company ("Catalog Seller"), (iii) Catherines #5124, Inc., a Pennsylvania corporation ("Catherines 5124"), (iv) Catherines #5147, Inc., a Florida corporation ("Catherines 5147"), (v) CCTM, Inc., a Delaware corporation ("CCTM"), (vi) Charming Sales Co. One, Inc., a Wisconsin corporation ("Charming One"), (vii) Charming Sales Co. Two, Inc., a Wisconsin corporation ("Charming Two"), (viii) Charming Sales Co. Three, Inc., a Wisconsin corporation ("Charming Three"), (ix) Charming Sales Co. Four, Inc., a Wisconsin corporation ("Charming Four"), (x) Charming Shoppes Receivables Corp., a Delaware corporation ("Charming Receivables"), (xi) Crosstown Traders Inc., a Delaware corporation ("Crosstown Traders"), (xii) CS Holdco II Inc., a Delaware corporation ("CS Holdco"), (xiii) CSI Industries, Inc., a Delaware corporation ("CSI"),

(xiv) Lane Bryant #6243, Inc., a Florida corporation ("Lane Bryant 6243"), (xv) Lane Bryant of

Pennsylvania, Inc., a Pennsylvania corporation ("Lane Bryant Pennsylvania"), (xvi) Lane Bryant

Outlet 4106, Inc., a California corporation ("Lane Bryant 4106"), (xvii) Lane Bryant Purchasing

Corp., an Ohio corporation ("Lane Bryant Purchasing"), (xviii) PSTM Inc., a Delaware

corporation ("PSTM") and (xix) Sonsi, Inc., a Delaware corporation ("Sonsi" and, together with

C.S.F., Catalog Seller, Catherines 5124, Catherines 5147, CCTM, Charming One, Charming Two,

Charming Three, Charming Four, Charming Receivables, Crosstown Traders, CS Holdco, CSI,

Lane Bryant 6243, Lane Bryant Pennsylvania, Lane Bryant 4106, Lane Bryant Purchasing and

PSTM, the "Company"), waiving all notice, hereby adopt by unanimous consent the resolutions

attached hereto as Exhibit A without the holding of a meeting, such resolutions to have the same

force and effect as if they had been adopted at a duly called and held meeting of each such Board

of Directors.

This unanimous written consent may be executed in several counterparts, all of

which together shall constitute one and the same instrument.

*[Signature Page Follows]*

IN WITNESS WHEREOF, the undersigned have executed this consent to be effective as of the date first above written.

DocuSigned by:

*Scott Glaser*

C13421A759C34B3...

Scott Glaser

DocuSigned by:

Jeff Sherman

*Exhibit A*

## <u>RESOLUTIONS OF THE BOARD OF DIRECTORS OF COMPANY</u>

The board of directors, board of managers, sole member, shareholders, or other similar governing body, as the case may be (the "<u>Board</u>") of the above listed entities (the "<u>Company</u>") have considered (i) entry into that certain restructuring support agreement (the "<u>Restructuring Support Agreement</u>") and/or any other agreements, certificates, instruments, powers of attorney, letters, forms of transfer, deeds and other documents in furtherance of a restructuring transaction or series of transactions by which Ascena Retail Group, Inc., a Delaware Corporation ("<u>Ascena</u>") and certain of its subsidiaries (including the Company) would restructure their debt obligations and other liabilities, and (ii) the filing of a voluntary petition for relief under the provisions of chapter 11 of title 11 of the United States Code, 11 U.S.C. §101 et seq. for the Company, and if applicable, local restructuring, insolvency, or recognition proceedings for the Company, pursuant to applicable law and in accordance with the requirements of the Company's governing documents and applicable law ((i) and (ii) together, the "<u>Restructuring Matters</u>"), and has reviewed and considered certain materials presented by the management of the Company and the Company's financial and legal advisors; including, but not limited to, materials regarding the liabilities and obligations of the Company, its liquidity, strategic alternatives available to it, and the effect of the foregoing on the Company's business, and has had adequate opportunity to consult such persons regarding the materials presented, obtain additional information, and to fully consider each of the strategic alternatives available to the Company and it was therefore **RESOLVED THAT**:

1.  **RESTRUCTURING SUPPORT AGREEMENT AND RESTRUCTURING TRANSACTION**

    A.  The Board has determined that it is in the best interest of the Company, its creditors, and other parties in interest for the Board to authorize the Company to enter into the Restructuring Support Agreement by and among the Company, certain of its affiliates, certain consenting creditors, and certain consenting parties substantially in the form presented to the Board on or in advance of the date hereof;

    B.  The Board acknowledges and believes that the Restructuring Support Agreement is procedurally and substantively fair to the Company as contemplated by applicable law and the Company's governing documents, to the extent applicable;

    C.  Each of Carrie Teffner, Gary Muto, Daniel Lamadrid and Michael Veitenheimer is hereby authorized and appointed to act as signatory on behalf of the Company in respect of the Restructuring Matters (each, an "<u>Authorized Person</u>" and collectively, the "<u>Authorized Persons</u>"), and each of the Authorized Persons, acting alone or with one or more other Authorized Persons be, and hereby are, authorized and empowered to enter on behalf of the Company into the Restructuring Support Agreement with such changes and in such form as the Authorized Person or Authorized Persons executing the same shall in his or their absolute discretion deem appropriate;

    D.  Each of the Authorized Persons, acting alone or with one or more other Authorized Persons be, and they hereby are, authorized and empowered to enter on behalf of the Company into a restructuring transaction or series of restructuring transactions by which the Company will restructure its debt obligations and other liabilities, including but not limited to the

restructuring transactions as described in the Restructuring Support Agreement (collectively, the "Restructuring Transactions");

E. Each of the Authorized Persons, acting alone or with one or more other Authorized Persons be, and they hereby are, authorized and empowered to take or cause to be taken any and all such other and further action, and to execute (under the common seal of the Company, if appropriate), acknowledge, deliver, and file any and all such agreements, certificates, instruments, and other documents in furtherance of the Restructuring Transactions to which the Company is or will be a party, including, but not limited to, the Restructuring Support Agreement, to incur and pay or cause to be paid all fees and expenses and engage such persons, in each case, in the form or substantially in the form thereof submitted to the Authorized Persons, with such changes, additions and modifications thereto as the Authorized Persons executing the same shall, in their absolute discretion approve, such approval to be conclusively evidenced by such Authorized Person's or Authorized Persons' execution and delivery thereof; and

F. Each of the Authorized Persons, acting alone or with one or more other Authorized Persons be, and they hereby are, authorized, directed and empowered in the name of, and on behalf of, the Company to take any and all actions to (i) obtain approval by a court of competent jurisdiction or any other applicable regulatory or governmental entity of the Restructuring Support Agreement in connection with the Restructuring Transactions, and (ii) obtain approval by any court of competent jurisdiction or any other applicable regulatory or governmental entity of any Restructuring Transactions.

## 2.  VOLUNTARY PETITION FOR RELIEF UNDER APPLICABLE BANKRUPTCY LAW AND SEEKING NECESSARY RELIEF

A. In the judgment of the Board, it is desirable and in the best interest of the Company, its interest holders, its creditors, and other parties in interest, that the Company file or cause to be filed voluntary petitions for relief (the "Bankruptcy Petitions") under the provisions of chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 et seq. (as amended, the "Bankruptcy Code") for the Company and any of its subsidiaries, any applicable restructuring, insolvency, or recognition proceedings for the Company in any other jurisdiction; and, in accordance with the requirements in the Company's governing documents and applicable law, and the Board hereby consents to, authorizes and approves, the filing of the Bankruptcy Petitions and the applicable proceedings in other jurisdictions, if any; and

B. Each of the Authorized Persons, acting alone or with one or more other Authorized Persons be, and hereby are, authorized to execute (under the common seal of the Company, if appropriate) and file on behalf of the Company and its subsidiaries and affiliates all petitions, schedules, lists, and other motions, papers, or documents, and to take any and all action that they deem necessary or proper to obtain such relief, including, but not limited to, any action necessary or proper to maintain the ordinary course operations of the Company's or any of its subsidiary's or affiliate's businesses.

3.    **RETENTION OF PROFESSIONALS**

A.  Each of the Authorized Persons, acting alone or with one or more other Authorized Persons be, and hereby are, authorized, empowered and directed to employ the: (i) the law firm of Kirkland & Ellis LLP as general bankruptcy counsel; (ii) Guggenheim Securities, LLC, as financial advisor; (iii) Alvarez and Marsal North America, LLC, as restructuring advisor; and (iv) any other legal counsel, accountants, financial advisors, restructuring advisors or other professionals the Authorized Persons deem necessary, appropriate or advisable; each to represent and assist the Company in carrying out its duties and responsibilities and exercising its rights under the Bankruptcy Code and any other applicable law (including, but not limited to, the law firms filing any pleadings or responses); and in connection therewith, the Authorized Persons, acting alone or with one or more other Authorized Persons be, and hereby are authorized, empowered and directed, in accordance with the terms and conditions hereof, to execute (under the common seal of the Company, if appropriate) appropriate retention agreements, pay appropriate retainers, and to cause to be filed appropriate applications for authority to retain such services; and

B.  Each of the Authorized Persons, acting alone or with one or more other Authorized Persons be, and hereby are, authorized, empowered and directed to execute (under the common seal of the Company, if appropriate) and file all petitions, schedules, motions, lists, applications, pleadings, and other papers, and to perform such further actions and execute (under the common seal of the Company, if appropriate) such further documentation that the Authorized Persons in their absolute discretion deem necessary, appropriate or desirable in accordance with these resolutions.

4.    **USE OF CASH COLLATERAL**

A.  To the extent applicable to the Company, in the judgment of the Board, it is desirable and in the best interest of the Company, its interest holders, its creditors, and other parties in interest, to obtain the benefits from the use of cash collateral (as such term is defined in section 363(a) of the Bankruptcy Code), which is security for certain of the Company's prepetition secured lenders under certain credit facilities by and among the Company, and the guarantors party thereto, the lenders party thereto (the "Prepetition Secured Lenders");

B.  To the extent applicable to the Company, each of the Authorized Persons be, and hereby is, authorized, directed and empowered in the name of, and on behalf of, the Company to seek approval of the use of cash collateral pursuant to a cash collateral order in interim and final form (a "Cash Collateral Order"), and, to the extent applicable to the Company, any Authorized Person be, and hereby is, authorized, empowered, and directed to negotiate, execute, and deliver any and all agreements, instruments, or documents, by or on behalf of the Company, necessary or advisable to implement the Cash Collateral Order, including providing for adequate protection (the "Adequate Protection Obligations") to the Prepetition Secured Lenders in accordance with section 363 of the Bankruptcy Code, for the use of cash collateral in connection with the Company's chapter 11 cases;

C.  Each of the Authorized Persons be, and hereby is, authorized, directed, and empowered in the name of, and on behalf of, the Company to execute and deliver any amendments,

supplements, modifications, renewals, replacements, consolidations, substitutions, and extensions of the Cash Collateral Order or to do such other things which shall in his/her absolute discretion be necessary, desirable, proper, or advisable to give effect to the foregoing resolutions, which determination shall be conclusively evidenced by his or their execution thereof.

## 5.    DEBTOR-IN-POSSESSION FINANCING

A.   The Company shall be, and hereby is, authorized by the Board to:  (a) undertake any and all transactions necessary, desirable, proper, or advisable to effectuate (i) a senior secured, super-priority debtor-in-possession credit agreement (together with all exhibits, schedules, and annexes thereto, as amended, amended and restated, supplemented, or otherwise modified from time to time, the "DIP ABL Agreement"), by and among Ascena Retail Group, Inc., the subsidiaries of Ascena Retail Group, Inc. from time to time party thereto as Guarantors (including the Company), JPMorgan Chase Bank, N.A., as administrative agent and collateral agent (in such capacities, the "DIP ABL Agent"), and each lender from time to time party thereto (collectively, the "DIP ABL Lenders"), on substantially the terms and subject to the conditions set forth in the DIP ABL Agreement or as may hereafter be fixed or authorized by any Authorized Person, acting alone or with one or more other Authorized Persons; and (ii) a senior secured, super-priority debtor-in-possession credit agreement (together with all exhibits, schedules, and annexes thereto, as amended, amended and restated, supplemented, or otherwise modified from time to time, the "DIP Term Loan Agreement," and together with the DIP ABL Agreement, the "DIP Agreements"), by and among Ascena Retail Group, Inc. from time to time party thereto as Guarantors (including the Company), and Alter Domus (US) LLC, as administrative agent (the "DIP Term Loan Agent," and, together with the DIP ABL Agents, the "DIP Agents"), and each lender from time to time party thereto (collectively, the "DIP Term Lenders," and, together with the DIP ABL Lenders, the "DIP Lenders"); (b) borrow funds from, request the issuance of letters of credit, provide guaranties to, pledge its assets as collateral to and undertake any and all related transactions contemplated thereby (collectively, the "Financing Transactions") with such DIP Lenders and on such terms as may be approved by any one or more of the Authorized Persons, as reasonably necessary for the continuing conduct of the affairs of the Company; (c) execute (under the common seal of the Company, if appropriate) and deliver and cause the Company to incur and perform its obligations under the DIP Agreements and Financing Transactions; (d) finalize the DIP Agreements and Financing Transactions, consistent in all material respects with those that have been presented to and reviewed by the Authorized Persons; and (e) pay related fees and grant security interests in and liens upon some, any or all of the Company's assets, as may be deemed necessary by any one or more of the Authorized Persons in connection with such Financing Transactions;

B.   Each of the Authorized Persons, acting alone or with one or more other Authorized Persons be, and they hereby are, authorized and empowered in the name of, and on behalf of, the Company, as debtor and debtor-in-possession, to take such actions and negotiate or cause to be prepared and negotiated and to execute (under the common seal of the Company, if appropriate), file, deliver and cause the Company to incur and perform its obligations under the DIP Agreements and the "Loan Documents" (collectively, the "DIP Loan

Documents"), any hedging agreements, any secured cash management agreements, any agreements with any letter of credit issuer, and all other agreements, instruments and documents (including, without limitation, any and all other intercreditor agreement, joinders, mortgages, deeds of trust, deeds of covenants, consents, notes, pledge agreements, security agreements, control agreements, interest rate swaps, caps, collars or similar hedging agreement and any agreements with any entity (including governmental authorities) requiring or receiving cash collateral, letters of credit or other credit support with proceeds from the DIP Agreements) or any amendments thereto or waivers thereunder (including, without limitation, any amendments, waivers, supplements, modifications, renewals, replacements, consolidations, substitutions and extensions of the DIP Agreements or any of the other DIP Loan Documents) that may be contemplated by, or required in connection with, the DIP Loan Documents and the Financing Transactions (collectively, the "DIP Financing Documents"); incur and pay or cause to be paid all fees and expenses and engage such persons, in each case, as such Authorized Persons shall in their judgment determine to be necessary or appropriate to consummate the transactions contemplated by the DIP Loan Documents or the DIP Financing Documents, which determination shall be conclusively evidenced by his or her execution or delivery thereof;

C.  The form, terms and provisions of the DIP Credit Agreement and each of the other DIP Loan Documents be, and the same hereby are in all respects approved, and that any Authorized Persons are hereby authorized and empowered, in the name of and on behalf of the Company, to execute (under the common seal of the Company, if appropriate), deliver and file the DIP Agreements and each of the DIP Loan Documents to which the Company is a party, each in the form or substantially in the form thereof submitted to the Authorized Persons, with such changes, additions and modifications thereto as the Authorized Persons executing the same shall approve, such approval to be conclusively evidenced by such Authorized Person's or Authorized Persons' execution and delivery thereof;

D.  Each of the Authorized Persons, acting alone or with one or more other Authorized Persons be, and hereby are, authorized and empowered to authorize the DIP Agents to file any UCC financing statements, PPSA financing statements and any necessary assignments for security or other documents in the name of the Company that the DIP Agents deem necessary or appropriate to perfect any lien or security interest granted under the DIP Loan Documents, including any such UCC financing statement or PPSA financing statement containing a generic description of collateral, such as "all assets," "all property now or hereafter acquired" and other similar descriptions of like import, and to execute (under the common seal of the Company, if appropriate) and deliver, and to record or authorize the recording of, such mortgages and deeds of trust in respect of real property of the Company, vessel mortgages, and such other filings in respect of intellectual and other property of the Company, in each case as the DIP Agents may reasonably request to perfect the security interests of the DIP Agents on behalf of itself and the other secured parties under the DIP Loan Documents;

E.  Each of the Authorized Persons, acting alone or with one or more other Authorized Persons be, and hereby are, authorized and empowered to execute and deliver any amendments, supplements, modifications, renewals, replacements, consolidations, substitutions and

extensions of the DIP Agreements or any of the other DIP Loan Documents or any of the other DIP Financing Documents, and to execute and file on behalf of the Company all petitions, schedules, lists and other motions, papers or documents, which shall in his or her sole judgment be necessary, proper or advisable, which determination shall be conclusively evidenced by his or her execution thereof;

F.  The Company and its affiliates will obtain substantial direct or indirect benefits from the incurrence of the loans under the DIP Agreements and the occurrence and consummation of the Financing Transactions under the DIP Agreements and the DIP Loan Documents and the transactions under the DIP Financing Documents, which are necessary and appropriate to the conduct, promotion and attainment of the business of the Company;

G.  The form, terms, and provisions of the DIP Order to which the Company is or will be subject, and the actions and transactions contemplated thereby be, and hereby are, authorized, adopted, and approved, and each of the Authorized Persons of the Company, acting alone or with one or more other Authorized Persons be, and hereby is, authorized and empowered, in the name of and on behalf of the Company, to take such actions and negotiate, or cause to be prepared and negotiated, and to execute (under the common seal of the Company, if appropriate), deliver, perform, and cause the performance of, the DIP Order and the DIP Financing Documents (together with the Interim DIP Order, collectively, the "<u>DIP Documents</u>"), incur and pay or cause to be paid all fees and expenses and engage such persons, in each case, in the form or substantially in the form thereof submitted to the Authorized Persons, with such changes, additions, and modifications thereto as the Authorized Persons of the Company executing the same shall approve, such approval to be conclusively evidenced by such Authorized Persons' execution and delivery thereof;

H.  The Company, as debtor and debtor-in-possession under the Bankruptcy Code be, and hereby is, authorized to incur the Adequate Protection Obligations and to undertake any and all related transactions on substantially the same terms as contemplated under the DIP Documents (collectively, the "<u>Adequate Protection Transactions</u>");

I.  Each of the Authorized Persons, acting alone or with one or more other Authorized Persons be, and hereby are, authorized and empowered in the name of, and on behalf of, the Company, to take such actions as in their discretion is determined to be necessary, appropriate, or desirable and execute (under the common seal of the Company, if appropriate) the Adequate Protection Transactions, including delivery of:  (a) the DIP Documents and such agreements, certificates, instruments, guaranties, notices, and any and all other documents, including, without limitation, any amendments to any DIP Documents (collectively, the "<u>Adequate Protection Documents</u>"); (b) such other instruments, certificates, notices, assignments, and documents as may be reasonably requested by the Agents; and (c) such forms of deposit, account control agreements, officer's certificates, and compliance certificates as may be required by the DIP Documents or any other Adequate Protection Document; and

**6.**     Each of the Authorized Persons, acting alone or with one or more other Authorized Persons be, and hereby are, authorized and empowered in the name of, and on behalf of, the

Company, to take all such further actions, including, without limitation, to pay or approve the payment of all fees and expenses payable in connection with the Adequate Protection Transactions and all fees and expenses incurred by or on behalf of the Company in connection with these resolutions, in accordance with the terms of the Adequate Protection Documents, which shall in their sole judgment be necessary, appropriate, or desirable to perform any of the Company's obligations under or in connection with the Interim DIP Order or any of the other Adequate Protection Documents and the transactions contemplated thereby and to carry out fully the intent of these resolutions.

7.   **BRAND PARTICIPATION AGREEMENT**

A.   The Board has determined that it may be desirable and in the best interest of the Company, its creditors, and other parties in interest for the Board to authorize the Company to enter into the Brand Participation Agreement, by and among the Company and SB360 Capital Partners, LLC, substantially in the form presented to the Board on or in advance of the date hereof (the "Brand Participation Agreement"); *provided*, that the Company entering into any such Brand Participation Agreement remains subject to a determination that such an agreement with respect to the Company is required in connection with the Restructuring Matters; and

B.   The Board acknowledges and believes that the Brand Participation Agreement is procedurally and substantively fair to the Company as contemplated by applicable law and the Company's governing documents, to the extent applicable.

8.   **WIND DOWN OF OPERATIONS**

A.   The Board has determined that it is in the best interest of the Company, its creditors, and other parties in interest to wind-down the brick-and-mortar operations of the "Catherines" brand and a substantial portion of the "Justice" brand in a manner consistent with the process described to the Board, with such modifications or in such other manner as may be necessary or appropriate to best maximize the value of the Company;

B.   The Board has determined that the wind-down of the brick-and-mortar operations of the "Catherines" brand and a substantial portion of the "Justice" brand as described to the Board, along with all corporate action and any documents and agreements necessary to implement such wind-downs be, and hereby are, in all respects authorized and approved; and

C.   Each of the Authorized Persons be, and hereby is, authorized, directed, and empowered in the name of, and on behalf of, each Company to execute, deliver, and file any pleadings, motions, documents, agreements, or applications, pay appropriate amounts, or to take any other action which shall in his, her, or their absolute discretion be necessary, desirable, proper, or advisable to give effect to the foregoing resolutions, which determination shall be conclusively evidenced by his, her, or their execution thereof.

9.   **ASSET SALES IN CONNECTION WITH CHAPTER 11**

A.   Each of the Authorized Persons be, and hereby is, authorized and directed, and empowered

in the name of, and on behalf of the Company, to begin the process of auctioning or selling certain of the Company's assets in conjunction with the chapter 11 filing and in connection therewith, each Authorized Person, with power of delegation, is hereby authorized and directed to execute any appropriate sale or other documents or retention agreements, pay appropriate retainers, and to cause to be filed appropriate applications for authority to retain the services of applicable agents.

10.    **FURTHER ACTIONS AND PRIOR ACTIONS**

A. The Company hereby authorizes any direct or indirect subsidiary of the Company or any affiliate of the Company or any entity of which the Company or any subsidiary of such Company is the sole member, general partner, managing member, or equivalent manager, as applicable, to take each of the actions described in these resolutions or any of the actions authorized in these resolutions, and none of the resolutions contained herein, or action taken in furtherance hereto, shall have or cause an adverse effect on any such subsidiary, affiliate, or the Company's interest therein (including without limitation, any automatic dissolution, divestiture, dissociation, or like event under applicable law);

B. In addition to the specific authorizations heretofore conferred upon the Authorized Persons, the Authorized Persons, either individually or as otherwise required by the Company's governing documents and applicable law, be, and each of them hereby is, authorized to execute (under the common seal of the Company, if appropriate), acknowledge, deliver, and file any and all agreements, certificates, instruments, powers of attorney, letters, forms, transfer, deeds and other documents on behalf of the Company relating to the Restructuring Matters;

C. Each of the Authorized Persons, acting alone or with one or more other Authorized Persons be, and hereby are, authorized and empowered, in the name of, and on behalf of, the Company, to take or cause to be taken any and all such other and further action, and to execute (under the common seal of the Company, if appropriate), acknowledge, deliver, and file any and all such agreements, certificates, instruments, and other documents and to pay all expenses, including but not limited to filing fees, in each case as in such Authorized Person's or Authorized Persons' absolute discretion, shall be necessary, appropriate, or desirable in order to fully carry out the intent and accomplish the purposes of the resolutions adopted herein;

D. Each of the Authorized Persons has received sufficient notice of the actions and transactions relating to the matters contemplated by the foregoing resolutions, as may be required by the organizational documents of the Company, or hereby waives any right to have received such notice;

E. All acts, actions, and transactions relating to the matters contemplated by the foregoing resolutions done in the name of and on behalf of the Company, which acts would have been approved by the foregoing resolutions except that such acts were taken before the adoption of these resolutions, are hereby in all respects approved, confirmed, ratified, and adopted in all respects as the true acts and deeds of the Company with the same force and effect as

if each such act, transaction, agreement, or certificate had been specifically authorized in advance by the Board; and

F.  Any Authorized Person, acting alone or together with one or more other Authorized Persons be, and hereby is, authorized to do all such other acts, deeds and other things as the Company itself may lawfully do, in accordance with its governing documents and applicable law, howsoever arising in connection with the matters above, or in furtherance of the intentions expressed in the foregoing resolutions, including, but not limited to, the negotiation, finalization, execution (under the common seal of the Company, if appropriate) and delivery of any other agreements, certificates, instruments, powers of attorney, letters, forms, transfer, deeds and other documents whatsoever as the individual acting may in his/her absolute and unfettered discretion approve, deem or determine necessary, appropriate or advisable, such approval, deeming or determination to be conclusively evidenced by said individual taking such action or the execution thereof.

*  *  *  *